# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-1725/10-1726

_____

| | | |
|---|---|---|
| Gerald A. Fast; Talisha Cheshire; Brady Gehrling, | * * * | |
| Appellees/Cross-Appellants, | * * | |
| v. | * * | |
| Applebee's International, Inc., | * * | |
| Appellant/Cross-Appellee. | * * | |
| _____ | * * | Appeals from the United States District Court for the |
| National Employment Lawyers Association; Secretary of Labor, United States Department of Labor, | * * * * | Western District of Missouri.<br><br>[PUBLISHED] |
| Amici on behalf of Appellees/Cross-Appellants, | * * * | |
| National Council of Chain Restaurants; National Restaurant Association, | * * * * | |
| Amici on behalf of Appellant/Cross-Appellee. | * * | |

_____

Submitted: January 13, 2011
Filed: April 21, 2011

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.
_____

HANSEN, Circuit Judge.

Applebee's International, Inc. (Applebee's) brings this interlocutory appeal from the district court's[1] denial of summary judgment in this employment wage dispute. Gerald A. Fast, Talisha Cheshire, and Brady Gehrling represent a class of 5,543 individuals (collectively "the employees") who are current and former servers and bartenders at Applebee's restaurants. They brought suit under the Fair Labor Standards Act (FLSA) based on Applebee's use of the "tip credit" to calculate their wages for purposes of meeting the minimum wage requirements of the FLSA. In denying Applebee's motion for summary judgment, the district court concluded that the Department of Labor (DOL)'s interpretation of the FLSA as contained in the Wage and Hour Division's Field Operations Handbook (Handbook) was reasonable, persuasive, and entitled to deference. Applebee's challenges that conclusion as inconsistent with the relevant statutes and the related regulations. The employees cross-appeal the district court's allocation of the burden of proof. We affirm the district court's order.

I.

The fighting issue in this case is how to properly apply the "tip credit" to employees whom both sides agree are "tipped employees" as that term is defined in the FLSA. The FLSA allows employers to pay a minimum cash wage of $2.13 per hour to employees in a "tipped occupation" as long as the employee's tips make up the difference between the $2.13 hourly cash wage and the current federal minimum

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, who certified the appeal pursuant to 29 U.S.C. § 1292(b).

wage, presently $7.25 per hour. See 29 U.S.C. § 203(m); 29 U.S.C. § 206(a)(1). The plaintiff servers and bartenders claim that Applebee's requires them to perform nontip-producing duties for significant portions of their shift while compensating them at the lower $2.13 tipped rate. The plaintiff bartenders claim that they were required to perform such duties as wiping down bottles, cleaning blenders, cutting fruit for garnishes, taking inventory, preparing drink mixers, and cleaning up after closing hours. The servers claim that they performed such duties as cleaning bathrooms, sweeping, cleaning and stocking serving areas, rolling silverware, preparing the restaurant to open, and general cleaning before and after the restaurant was open. Applebee's counters that servers and bartenders are in tipped occupations, so that any incidental duties they perform as part of that occupation are subject to the tip credit and can be paid at the $2.13 hourly rate, regardless of the amount of time spent performing these duties, as long as each employee's tips make up the difference between $2.13 per hour and the full minimum wage rate. While the employees dispute its relevancy, both sides agree that the plaintiffs received in employer cash payments and tips a sum at least equal to the required minimum wage per hour for all hours worked.

The DOL regulations recognize that an employee may hold more than one job for the same employer, one which generates tips and one which does not, and that the employee is entitled to the full minimum wage rate while performing the job that does not generate tips. See 29 C.F.R. § 531.56(e). The DOL's 1988 Handbook provides that if a tipped employee spends a substantial amount of time (defined as more than 20 percent) performing related but nontipped work, such as general preparation work or cleaning and maintenance, then the employer may not take the tip credit for the amount of time the employee spends performing those duties. (Appellant's Add. at 32, DOL Handbook § 30d00(e).) The district court deferred to the DOL's interpretation contained in the DOL Handbook to deny summary judgment to Applebee's.

The parties also disputed the proper burden of proof. The employees argued that they needed to establish only that Applebee's paid them $2.13 per hour for a period of time and then the burden shifted to Applebee's to prove that it was allowed to take the tip credit by presenting evidence of the number of hours the employees worked in a tipped occupation. The district court disagreed, concluding that the employees had to do more than show that they were paid $2.13 per hour because the employees did not dispute that they were subject to the tip credit for at least some of their work. The district court concluded that the employees had to "make a prima facie showing which hours were not properly paid" (Dist. Ct. Mar. 4, 2010 Order at 19), and if there were no records of the time spent on specific duties, then the burden would shift to Applebee's to show that the employees' calculations were not reasonable.

Applebee's filed this interlocutory appeal, arguing, as noted above, that the Handbook is contrary to the express language of the statute and regulations. The employees cross-appeal the district court's allocation of the burden of proof to the employees to prove they were not properly compensated. Both issues are included in the district court's certification permitting an interlocutory appeal, and we address them in turn.

II.

A.    Engaged in a Tipped Occupation

In this interlocutory appeal, we conduct a *de novo* review of the district court's summary judgment ruling and its statutory interpretation. See Haug v. Bank of Am., N.A., 317 F.3d 832, 835 (8th Cir. 2003). The FLSA requires employers to pay a minimum hourly wage, which is currently $7.25 per hour. See 29 U.S.C. § 206(a)(1). The "wage" paid to a "tipped employee" is defined as the sum of (1) the cash wage paid to the employee, which must be at least the minimum cash wage that was

required to be paid to tipped employees on August 20, 1996 ($2.13 per hour), and (2) an additional amount based on the tips received by the employee that is equal to the difference between the amount stated in paragraph (1) and the current rate required by § 206(a)(1). See 29 U.S.C. § 203(m) (defining "wage"). The amount required by paragraph (2) is commonly referred to as the "tip credit" because it allows the employer to avoid a larger cash payment to the employee as long as the employee's tips make up the difference between $2.13 per hour and the current minimum wage.

A "tipped employee" as used in § 203(m) is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." § 203(t). The tip credit does not apply to just any employee who ever received a tip. It applies only to employees engaged in an occupation where the employee "customarily and regularly receives more than $30 a month in tips." The parties do not dispute that the servers and bartenders involved in this case are engaged in an occupation in which they customarily and regularly receive at least $30 per month in tips and are "tipped employees" under the statute. The dispute revolves around whether the servers and bartenders are "engaged" in those occupations when Applebee's requires them to perform duties that do not directly result in a tip. Applebee's argues that the statute is focused on the occupation, not the specific duties performed, such that it can take the tip credit for the entirety of a server's or bartender's shift, as long as the employee receives sufficient tips during the shift to make up the difference between $2.13 per hour and $7.25 per hour, regardless of how much time the employee spends performing tip-producing duties. The employees argue that Applebee's requires them to perform duties outside of the server and bartender occupations for significant parts of their shifts, such that they are entitled to full minimum wage rates when they are not "engaged" in the duties of those occupations.

As noted previously, an employee is a tipped employee if two things occur: 1) he is engaged in an occupation, and 2) the occupation is one in which he regularly and

customarily receives at least $30 in tips per month. § 203(t). "Occupation" is not defined in the FLSA. The DOL has promulgated regulations to implement the tip credit. See 29 C.F.R. §§ 531.50-531.60. Where a statute does not define a term, and "Congress has delegated authority to an agency to implement an ambiguous statute, we are required to accept the agency's statutory interpretation, so long as it is reasonable." Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan, 574 F.3d 644, 649 (8th Cir. 2009) (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)). If Congress's intent is clear, we need not defer to a regulation that is contrary to that clear intent. See Senger v. City of Aberdeen, 466 F.3d 670, 672 (8th Cir. 2006). "But when Congress's intent is unclear and the statute contains an explicit or implicit gap, we will defer to the agency's regulation so long as it is not 'arbitrary, capricious, or manifestly contrary to the statute.'" Id. (quoting Chevron, 467 U.S. at 844).

The DOL's regulations recognize that an employee may be engaged in dual jobs. See 29 C.F.R. § 531.56(e) (entitled "dual jobs"); see also 29 C.F.R. § 516.28(a)(4) & (5) (requiring employers to keep records for its tipped employees of "[h]ours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours," and "[h]ours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours"). Section 531.56(e) states that if an employee works two jobs, one in which his work customarily and regularly produces tips and one in which it does not, the employee must be considered to be employed in two occupations, such that the tip credit may not be taken for hours of employment worked in the occupation not subject to tips. See § 531.56(e). The regulation gives the example of a hotel employee who works both as a bartender and as a maintenance man. "He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man." Id. It distinguishes that situation from "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee

and occasionally washing dishes or glasses," and "from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group." Id. "Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." Id.

The parties do not dispute that § 531.56(e) is entitled to Chevron deference. They do disagree as to its meaning. While the regulation does provide the example of the waiter/maintenance man and distinguishes those dual jobs from a waitress or counterman performing related duties in their occupations, it does not further explain how to determine if an employee is engaged in dual jobs. The regulation recognizes that an employee may perform "related duties in . . . a tipped occupation" that are not themselves tip producing "part of [the] time" and "occasionally," and that the time spent performing these related duties is subject to the tip credit, but it does not address the impact of an employee performing related duties more than "part of [the] time" or more than "occasionally." Nor does it define "related duties" or address a tipped employee who performs duties unrelated to his tipped occupation. The regulation's failure to address these questions makes it ambiguous. See Barnhart v. Walton, 535 U.S. 212, 218 (2002) ("[S]uch silence, after all, normally creates ambiguity. It does not resolve it.").

The DOL has further interpreted its dual jobs regulation through opinion letters, its 1988 Handbook, and in an amicus brief filed in this appeal. In its 1988 Handbook, the DOL recognized and repeated the distinctions made in the regulation between the waiter who also worked as a maintenance man and a waitress who performed some related nontip-producing work. The Handbook states that an employer can take "the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities)," including the examples of a waiter "who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses." (Appellants' Add. at 32, DOL Handbook § 30d00(e).) The Handbook

-7-

goes on and makes clear however, that such duties must be "incidental to the regular duties of the server" and must be "generally assigned to the servers." (Id.) The Handbook concludes that "where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." (Id.) The Handbook incorporates answers provided in prior opinion letters, including that: a waitress assigned to general after-hours cleaning duties was performing tipped work as long as the duties were assigned generally to all wait staff and not specific employees, (Appellant's Add. at 22, Dep't of Labor, Wage & Hour Div., Op. Letter WH-502, 1980 WL 141336 (Mar. 28, 1980)); and a waiter assigned to perform opening preparatory work, where that waiter was the only one so assigned and spent 30 percent to 40 percent of his shift performing the preparatory work, was not performing tipped work, (Appellant's Add. at 25, Dep't of Labor, Wage & Hour Div., Op. Letter WH-FLSA-854 (Dec. 20, 1985)).

These types of agency interpretations (opinion letters and handbooks) of its own regulation are not entitled to Chevron deference because they are not subject to notice and comment rule making procedures. See Gonzales v. Oregon, 546 U.S. 243, 255-56 (2006). Where the rule to be interpreted "is a creature of the Secretary's own regulations, [however, its] interpretation of it is, under [Supreme Court] jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal marks omitted). This type of Auer deference is appropriate for DOL interpretations of its own regulations, where the regulations "g[i]ve specificity to a statutory scheme the Secretary [of the DOL] [i]s charged with enforcing and reflect[] the considerable experience and expertise the Department of Labor ha[s] acquired over time with respect to the complexities of the Fair Labor Standards Act." Gonzales, 546 U.S. at 256-57. Less deference is due an agency when, "instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory

language," id. at 257, in which case an agency's interpretation is "entitled to respect" to the extent it has the "power to persuade," id. at 256 (discussing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Nonetheless, "Auer deference is warranted only when the language of the regulation is ambiguous." Christensen v. Harris County, 529 U.S. 576, 588 (2000).

The regulation at issue here is of the former type. Congress added the tip provisions to § 203(m) and added the definition of "tipped employee" to § 203(t) in 1966, but it did not define occupation or address the possibility of an employee working more than one occupation for the same employer. See Pub. L. 89-601, § 101, 80 Stat. 830, 830 (Sept. 23, 1966). The following year, the Secretary of Labor promulgated the dual jobs regulation in an attempt to further define when an employee is engaged in a tipped occupation, adding subsection (e) to § 531.56. See Wage Payments Under the Fair Labor Standards Act of 1938, 32 Fed. Reg. 13,575, 13,580-81 (Sept. 28, 1967). Thus, the dual jobs regulation is not a regulation in which the agency merely parroted the terms of the statute such that the lesser Skidmore deference should apply. See Gonzales, 546 U.S. at 256-57.

The Supreme Court has accorded Auer deference to agency interpretations of ambiguous regulations with regular frequency in recent years. The Supreme Court relied on Auer in deferring to the Federal Reserve System Board's interpretation of Truth In Lending regulations as revealed in the Board's amicus brief filed with the Court where the regulation was silent on the issue at hand, making it ambiguous, and the Board's stated position was consistent with its past views. See Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880-81 (2011). It also cited Auer in "accept[ing] as correct" the Environmental Protection Agency's internal memorandum interpreting the Clean Water Act where the statute did not speak to the precise question at issue and the regulation was likewise ambiguous. See Coeur Alaska, Inc. v. SE Alaska Conservation Council, 129 S. Ct. 2458, 2469-70 (2009). The Supreme Court gave Auer deference to the Treasury Department's interpretation of anti-alienation

regulations even though the Department's interpretation had changed over time where there was "'simply no reason to suspect that the interpretation [did] not reflect the agency's fair and considered judgment on the matter in question.'" Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 129 S. Ct. 865, 872 & n.7 (2009) (quoting Auer, 519 U.S. at 462).

We conclude that the DOL's interpretation of § 531.56(e) is entitled to Auer deference. The regulation at issue in Auer adopted a salary basis test to interpret 29 U.S.C. § 213(a)(1) for purposes of the FLSA's overtime pay requirements. See Auer, 519 U.S. at 456-57. Likewise, the regulation here created the dual jobs test to further interpret § 203(t), a statute which the Department of Labor is "charged with enforcing," and the regulation "reflect[s] the considerable experience and expertise the Department of Labor ha[s] acquired over time with respect to the complexities of the Fair Labor Standards Act." Gonzales, 546 U.S. at 256-57. Section 203(t) of the FLSA does not define when an employee is "engaged in an occupation," and the DOL promulgated the dual jobs regulation to further clarify that phrase. The regulation is not a mere recitation of the words used by Congress in the statute, which itself does not even recognize the possibility of an employee performing more than one occupation for the same employer, let alone during the same shift. Thus, the dual jobs test set forth in the regulation is "a creature of the [DOL's] own regulations." Auer, 519 U.S. at 461 (internal marks omitted). Section 531.56(e) is itself ambiguous because it does not address an employee performing related duties more than "part of [the] time" or more than "occasionally," which further supports granting Auer deference to the agency's interpretation. See Christensen, 529 U.S. at 588. The DOL's interpretation of § 531.56(e) is therefore "controlling unless plainly erroneous or inconsistent with the regulation." Auer, 519 U.S. at 461 (internal marks omitted).

Applebee's argues that neither the statute nor the regulation places a quantitative limit on the amount of time a tipped employee can spend performing duties related to her tipped occupation (but not themselves tip producing) as long as the total tips

received plus the cash wages equal or exceed the minimum wage. The regulation, to which we owe <u>Chevron</u> deference, makes a distinction between an employee performing two distinct jobs, one tipped and one not, and an employee performing related duties within an occupation "part of [the] time" and "occasionally." § 531.56(e). By using the terms "part of [the] time" and "occasionally," the regulation clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation. "Occasionally" is defined as "now and then; here and there; sometimes." <u>Webster's Third New Int'l Unabridged Dictionary</u> 1560 (1986); <u>see also United States v. Hackman</u>, 630 F.3d 1078, 1083 (8th Cir. 2011) (using dictionary to determine ordinary meaning of a term used in the commentary to the United States Sentencing Guidelines). The term "occasional" is also used in other contexts within the FLSA, such as in § 207, which allows a government employee to work "on an occasional or sporadic basis" in a different capacity from his regular employment without the occasional work hours being added to the regular work hours for calculating overtime compensation. <u>See</u> 29 U.S.C. § 207(p)(2). The DOL's regulation defines occasional or sporadic to mean "infrequent, irregular, or occurring in scattered instances." 29 C.F.R. § 553.30(b)(1). Thus, the DOL's regulations consistently place temporal limits on regulations dealing with the term "occasional."

A temporal limitation is also consistent with the majority of cases that address duties related to a tipped occupation. The length of time an employee spends performing a particular "occupation" has been considered relevant in many cases. For example, even when the nontip-producing duties are related to a tipped occupation, if they are performed for an entire shift, the employee is not engaged in a tipped occupation and is not subject to the tip credit for that shift. <u>See, e.g.</u>, <u>Myers v. Copper Cellar Corp.</u>, 192 F.3d 546, 549-50 (6th Cir. 1999) (noting that 29 C.F.R. § 531.56(e) "illustrat[es] that an employee who discharges distinct duties on diverse work shifts may qualify as a tipped employee during one shift" but not the other and holding that servers who spent entire shifts working as "salad preparers" were employed in dual

jobs, even though servers prepared the very same salads when no salad preparer was on duty, such that including salad preparers in a tip pool invalidated the pool); Roussell v. Brinker Int'l, Inc., No. 05-3733, 2008 WL 2714079, **12-13 (S.D. Tex. 2008) (employees who worked entire shift in Quality Assurance (QA) were not tipped employees eligible to be included in tip pool even though servers performed QA duties on shifts when no QA was working; court "agrees that such work likely can be considered incidental to a server's job when performed intermittently," but distinguished full shifts). The same is true of nontipped duties performed during distinct periods of time, such as before opening or after closing. See Dole v. Bishop, 740 F. Supp. 1221, 1228 (S.D. Miss. 1990) ("Because [the] cleaning and food preparation duties [performed for substantial periods of time before the restaurant opened] were not incidental to the waitresses' tipped duties, the waitresses were entitled to the full statutory minimum wage during these periods of time."). Conversely, where the related duties are performed intermittently and as part of the primary occupation, the duties are subject to the tip credit. See, e.g., Pellon v. Bus. Representation Int'l, Inc., 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007) (rejecting skycap employees' challenge to use of the tip credit where "the tasks that allegedly violate the minimum wage are intertwined with direct tip-producing tasks throughout the day"), aff'd, 291 F. Appx. 310 (11th Cir. 2008).

Because the regulations do not define "occasionally" or "part of [the] time" for purposes of § 531.56(e), the regulation is ambiguous, and the ambiguity supports the DOL's attempt to further interpret the regulation. See Auer, 519 U.S. at 461. We believe that the DOL's interpretation contained in the Handbook—which concludes that employees who spend "substantial time" (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time without the tip credit—is a reasonable interpretation of the regulation. It certainly is not "clearly erroneous or inconsistent with the regulation." Id. The regulation places a temporal limit on the amount of related nontipped work an employee can do and still be considered to be performing a tipped occupation. The

DOL has used a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA. For example, an "employee employed as seaman on a vessel other than an American vessel" is not entitled to the protection of the minimum wage or overtime provisions of the FLSA. See 29 U.S.C. § 213(a)(12). The DOL recognized that seamen serving on such a vessel sometimes perform nonseaman work, to which the FLSA provisions do apply, and it adopted a regulation that provides that a seaman is employed as an exempt seaman even if he performs nonseaman work, as long as the work "is not substantial in amount." 29 C.F.R. § 783.37. "[S]uch differing work is 'substantial' if it occupies more than 20 percent of the time worked by the employee during the workweek." Id. Similarly, an employee employed in fire protection or law enforcement activities may perform nonexempt work without defeating the overtime exemption in 29 U.S.C. § 207(k) unless the nonexempt work "exceeds 20 percent of the total hours worked by that employee during the workweek." 29 C.F.R. § 553.212(a). And an individual providing companionship services as defined in 29 U.S.C. § 213(a)(15) does not defeat the exemption from overtime pay for that category of employee by performing general household work as long as "such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6. The 20 percent threshold used by the DOL in its Handbook is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms "part of [the] time" and "occasionally" used in that regulation.

We note that the parties dispute which specific duties are subject to the 20 percent limit for related duties in a tipped occupation and which duties are the tip-producing part of the server's or bartender's tipped occupation itself. The regulation lists activities such as "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" as "related duties in . . . a tipped occupation." § 531.56(e). The Handbook repeats these examples and states that the 20 percent limit applies to "general preparation work or maintenance." (Appellant's Add. at 32, DOL Handbook § 30d00(e).) Although the district court stated that "it was for the

Court to decide what duties comprise the occupation of a server or bartender" (Dist. Ct. Order at 6 n.3), the order under review did not do so and concluded only that "[e]mployees may be paid the tipped wage rate for performing general preparation and maintenance duties, so long as those duties consume no more than twenty percent of the employees' working time" (id. at 15). To the extent that questions remain concerning which duties the 20 percent rule applies to, those issues are beyond the scope of this interlocutory appeal, and we do not address them. We hold only that the district court properly concluded that the Handbook's interpretation of § 531.56(e) governs this case.

B.    Burden of Proof

"[A]n employee who brings suit . . . for unpaid minimum wages . . . has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superceded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, § 5, 61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)). Noting that it is the employer's duty to keep employment records, the Court in Mt. Clemens stated that as long as "the employer has kept proper and accurate records[,] the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." Id. at 687. Penalizing the employee in that situation would only encourage employers to fail to keep proper records, so the Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-88. By contrast, an exemption under

-14-

the FLSA is an affirmative defense, and the employer bears the burden of proof to establish that an exemption applies. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).

We have applied the Mt. Clemens burden shifting framework in FLSA cases concerning overtime wages, requiring the plaintiff employees to present evidence that they worked more than their scheduled hours without compensation. See Hertz v. Woodbury County, Iowa, 566 F.3d 775, 783-84 (8th Cir. 2009) (requiring employees to establish they were not relieved of their duties during mealtime, such that it was compensable time, and distinguishing other circuits that classified mealtimes as an exemption under the FLSA). Like mealtimes, the tip credit is not contained in the exemptions listed in 29 U.S.C. § 207(e), where the burden does shift to the employer to prove, as an affirmative defense, that the exemption applies. Thus, following Hertz, the Mt. Clemens standard places the initial burden on the employees to establish they worked hours for which they were not properly paid. Like the employees in Hertz who carried the burden of establishing "that their actions during their scheduled mealtimes were for the benefit of the employer and thus not part of a bona fide meal period," 566 F.3d at 784, the employees here must establish that they spent a substantial amount of time performing nontip-producing duties such that they were not performing a tipped occupation for at least portions of their shifts. If Applebee's did not maintain sufficient records from which the employees can differentiate between when they performed tipped duties and when they performed related but nontip-producing duties within the meaning of the dual jobs regulation, then the employees can use the relaxed Mt. Clemens standard by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. The district court properly applied the Mt. Clemens burden of proof.

## III.

The district court's order is affirmed.

_____