Jamel FLOOD, Ira Heaston, Isaac Heaston, Tashauna Reid, Patrick Pink, Amy Courtemanche, Eury Espinal, and Jose Fernandez on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CARLSON RESTAURANTS INC., Carlson Restaurants Worldwide Inc., and T.G.I. Friday's Inc., Defendants.

No. 14 Civ. 2740(AT).

United States District Court, S.D. New York.

Signed March 27, 2015.

See Dkt. Nos. 16, 22, 23, 28. Accordingly, it remains unresolved.

574

Brian Scott Schaffer, Frank Joseph Mazzaferro, Joseph A. Fitapelli, Arsenio David Rodriguez, Fitapelli & Schaffer, LLP, New York, NY, Justin Mitchell Swartz, Sally Jasmine Abrahamson, Outten & Golden, LLP, New York, NY, for Plaintiffs.

Gerald Leonard Maatman, Jr. Jennifer A. Riley, Seyfarth Shaw LLP, Chicago, IL, Gina Renee Merrill, Scott Roblan Rabe, Seyfarth Shaw LLP, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

ANALISA TORRES, District Judge:

Plaintiffs, on behalf of themselves and all others similarly situated, allege that Defendants, Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and T.G.I. Friday's Inc., violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL"), the New Jersey Wage and Hour Law, and the Massachusetts Wage Laws.[1] Defendants move to transfer this action to the Northern District of Texas and to partially dismiss Plaintiffs' FLSA minimum wage claim. For the reasons stated below, the motions are DENIED.

## BACKGROUND [2]

Jamel Flood, Ira Heaston, Isaac Heaston, Tashauna Reid, Patrick Pink, Eury Espinal, and Jose Fernandez (collectively, the "Named Plaintiffs") are former tipped employees at T.G.I. Friday's restaurants owned and/or operated by Defendants. Second Am. Compl. ¶¶ 1, 50–51, 55–56, 60–62, 66–67, 71–72, 81–82, 86–88, ECF No. 138. The Named Plaintiffs worked at T.G.I. Friday's restaurants in New York, New Jersey, Massachusetts, Virginia, and Florida, *id.* ¶¶ 50, 55, 60–61, 66, 71, 81, 86–87, and reside in New York, New Jersey, and Massachusetts, *id.* ¶¶ 49, 54, 59, 65, 70, 80, 85. Defendants' principal executive offices are located in Carrollton, Texas, *id.*

¶¶ 98, 106, 115, which is in the Northern District of Texas. Plaintiffs allege, *inter alia,* that Defendants violated the FLSA by paying "tipped workers" (*e.g.*, servers, bussers, runners, bartenders, barbacks, and hosts), *id.* ¶ 1, the "tipped minimum wage rate rather than . . . the full hourly minimum wage rate," despite requiring these workers to spend more than twenty percent of their shifts performing "side work" not directed toward producing tips, *id.* ¶ 358.

## DISCUSSION

I. *Motion to Transfer*

A. Legal Standard

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.2006). The party seeking transfer bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *New York Marine & Gen. Ins. Co. v. Lafarge*

---

1. On January 30, 2015, Plaintiffs filed a motion for leave to file a second amended complaint. ECF No. 131. On February 10, 2015, Defendants consented to the proposed amendment. ECF No. 137. On February 11, 2015, the parties submitted a stipulation, which the Court "so-ordered," that memorialized Defendants' consent and noted that "Defendants' partial motion to dismiss . . . is unaffected by the filing of the Second Amended Complaint." ECF No. 138. Accordingly, Plaintiffs' motion is DENIED as moot, *see* Fed.R.Civ.P. 15(a)(2) ("[A] party may amend its pleading only with

the opposing party's written consent *or* the court's leave." (emphasis added)), and the Court treats the second amended complaint as the operative complaint.

2. The following facts are taken from the second amended complaint and accepted as true for the purposes of these motions. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *Tulepan v. Roberts*, 14 Civ. 8716, 2014 WL 6808313, at *1 n. 1 (S.D.N.Y. Dec. 3, 2014).

*N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

█ To determine whether transfer is warranted, a district court engages in a two-step inquiry. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F.Supp.2d 392, 394 (S.D.N.Y.2006). "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate . . . several factors relating to the convenience of transfer and the interests of justice." *Id.* (internal quotation marks and citations omitted). The factors to be considered at the second step include:

(1) the plaintiffs choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*New York Marine*, 599 F.3d at 112 (internal quotation marks and citation omitted). In addition, courts commonly consider "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice, based on the totality of circumstances." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F.Supp.2d 446, 459 (S.D.N.Y.2010). "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the [c]ourt's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000) (internal quotation marks and citations omitted).

**B.  Convenience of Transfer and the Interests of Justice**[3]

   **i.  Plaintiffs' Choice of Forum**

█ "A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Hershman v. UnumProvident Corp.*, 658 F.Supp.2d 598, 601 (S.D.N.Y.2009) (internal quotation marks and citation omitted). When a plaintiff chooses a forum other than her home forum, however, the court must consider the reasons for the plaintiff's decision. *Id.* "[T]he more such a decision is 'dictated by reasons that the law recognizes as valid, the greater the deference that will be given to' it; the more it appears the decision is 'motivated by forum shopping reasons,' the less deference will be accorded to it." *Id.* (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir.2001)).

█ Although none of the Named Plaintiffs reside in the Southern District of New York, Flood's claims arose from his employment in this District, which mitigates any inference of forum shopping and entitles his choice of forum to deference. *See, e.g., Koslofsky v. Santaturs, Inc.*, 10 Civ. 9160, 2011 WL 10894856, at *2 (S.D.N.Y. Aug. 18, 2011) ("[A] plaintiffs chosen venue is . . . entitled [to] more weight when there is a material connection between the forum state and the events allegedly underlying the claim."). Moreover, the majority of the Named Plaintiffs live in the New York metropolitan area, which makes the Southern District of New York a convenient forum. *See Iragorri*, 274 F.3d at 73 (noting that "the plaintiff's convenience" is a "legitimate reason[ ]" for choosing a particular forum). Finally, there is no evidence

---

**3.** The parties agree that this case could have been brought in the Northern District of Texas. *See* Def. Mem. 10–11, ECF No. 39; Pl. Mem. 3, ECF No. 50. The Court likewise agrees and, therefore, finds that the first step of the transfer inquiry has been satisfied.

that Plaintiffs selected the Southern District of New York to gain some improper advantage.

Defendants nevertheless argue that Plaintiffs' choice of forum should not be afforded deference because Plaintiffs assert their claims on an aggregate basis. Def. Mem. 12–14, ECF No. 39. The Court disagrees, as "the 'opt-in' structure of [FLSA] collective actions ... strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action." *Koslofsky*, 2011 WL 10894856, at *2 (internal quotation marks and citation omitted). Thus, a "[p]laintiff's choice of forum in a FLSA collective action is entitled [to] more deference than the choice of forum in Rule 23 national class actions." *Id.* Here, Plaintiffs are pursuing their FLSA claims as a collective action, not a Rule 23 class action. Because Plaintiffs' choice of forum is entitled to deference, the Court concludes that this factor weighs against transfer.

### ii. Convenience of Witnesses

"The convenience of ... witnesses is generally considered the most important factor in deciding a motion to transfer venue." *Truk Int'l Fund, LP v. Wehlmann*, 08 Civ. 8462, 2009 WL 1456650, at *3 (S.D.N.Y. May 20, 2009) (internal quotation marks and citation omitted). In assessing this factor, the court must "not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y.2004). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian*

*Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 402 (S.D.N.Y.2005).

Applying the foregoing principles, the Court finds the convenience of witnesses factor to be neutral in the transfer analysis. On the one hand, testimony concerning Defendants' corporate policies and practices will be germane to resolving Plaintiffs' claims, which weighs in favor of transfer to the Northern District of Texas (*i.e.*, the forum in which Defendants' headquarters is located). *See, e.g., Martignago v. Merrill Lynch & Co.*, 11 Civ. 3923, 2012 WL 112246, at *6 (S.D.N.Y. Jan. 12, 2012) (explaining that where a plaintiff alleges "FLSA violations flowing from a corporate policy mandating an allegedly unlawful compensation scheme, courts generally conclude that the more critical and extensive testimony is likely to be provided by the parties and witnesses residing where the company is headquartered and where the executives who set company-wide policies are based" (internal quotation marks, citation, and alterations omitted)). On the other hand, Defendants have not proffered evidence demonstrating that witnesses familiar with these policies and practices— most of whom are current employees who could be deposed in Texas—would be particularly inconvenienced if this action remains in the Southern District of New York. *See, e.g., Guardian Life Ins. Co. v. Hernandez*, 11 Civ. 2114, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) ("Defendants [must] demonstrate[ ] sufficient inconvenience to witnesses to justify transfer."). In addition, corporate witnesses will not be the exclusive source of material testimony. Indeed, testimony related to (1) the on-site application of Defendants' policies and (2) employees' actual duties and remuneration will also be integral to the resolution of Plaintiffs' claims. *See, e.g., Morris v. Ernst & Young, LLP*, 12 Civ. 838, 2012 WL 3964744, at *3–4 (S.D.N.Y. Sept. 11, 2012) (noting that "[i]n-

formation about the duties that [p]laintiffs actually performed is more likely to come from ... witnesses who actually observed [p]laintiffs at work, rather than witnesses from corporate headquarters"); *Amick v. Am. Express Travel Related Servs. Co.*, 09 Civ. 9780, 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) ("Though [plaintiff] alleges that an illegal compensation scheme was developed in New York, the alleged violations occurred in North Carolina, and his claims will necessarily rely on the testimony of co-workers (and putative class members), immediate supervisors, human resources personnel, and payroll clerks—all of whom were employed in [North Carolina].").

iii. Location of Relevant Documents and Ease of Access to Sources of Proof

■ "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y.2007). Thus, "unless the defendant makes a detailed showing as to the burden it would incur absent a transfer," its "assertion that documents are located in the transferee forum is entitled to little weight." *Intria Corp. v. Intira Corp.*, 00 Civ. 7198, 2000 WL 1745043, at *4 (S.D.N.Y. Nov. 27, 2000). Defendants have made no such showing. Therefore, the Court affords little weight to Defendants' argument that transfer is appropriate because key records and the employees responsible for maintaining and organizing these records are in the Northern District of Texas. *See* Def. Mem. 16. Moreover, although many relevant documents are located at Defendants' headquarters, Defendants

acknowledge that other relevant documents, including active employees' personnel records, are located throughout the nation. *Id.* Accordingly, the Court concludes that this factor is neutral.

iv. Convenience of Parties

■ "A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *SBAV LP v. Porter Bancorp, Inc.*, 13 Civ. 372, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (internal quotation marks and citation omitted). "The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Koslofsky*, 2011 WL 10894856, at *3 (internal quotation marks and citation omitted). In this case, Defendants would find it easier to litigate in the Northern District of Texas, *see* Def. Mem. 15, while the Named Plaintiffs would find it easier to litigate in the Southern District of New York, *see* Pl. Mem. 10, ECF No. 50. With respect to the potential opt-in plaintiffs—who are spread across twenty-two states, *see* Cunningham Decl. ¶ 14, ECF No. 37 [4]—the Northern District of Texas and the Southern District of New York appear to be equally convenient. Because transfer would merely switch inconvenience from one party to the other, the Court finds that this factor is neutral.

v. Locus of Operative Facts

■ "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Martignago*, 2012 WL 112246, at *7 (internal quotation marks and citation omitted).

---

**4.** "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co.*, 11 Civ. 6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

In a nationwide FLSA action, however, it is often difficult to fix a single locus of operative facts, because each employee's claim typically arises not only from the objectionable policy's development, but also its on-site implementation. *See, e.g., Fairchild v. Eisai, Inc.,* 11 Civ. 452, 2011 WL 3438408, at *3 (D.Conn. Aug. 4, 2011) ("[T]he locus of operative facts in this case is split between New Jersey—the location of [defendant's] corporate headquarters, where, according to [defendant], all the relevant decisions in this case occurred—and the various districts in which ... plaintiffs worked."). Under these circumstances, courts have concluded that operative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations. *See, e.g., Bukhari v. Deloitte & Touche LLP,* 12 Civ. 4290, 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) (explaining that in wage-and-hour disputes, "the locus of operative facts is the location of the alleged violations ..., not the corporate headquarters" where the allegedly unlawful practices were formulated); *Amick,* 2010 WL 307579, at *1 n. 1, *2 (finding the "center of gravity of the litigation" to be in the forum where the employee worked and the violations of federal and state law occurred, "even assuming [that the] improper compensation policy was developed at [defendant's] corporate headquarters"). Thus, the Court rejects Defendants' assertion that operative facts lie solely "in the Northern District [of Texas], where corporate policies and practices were developed, adopted and communicated." Def. Mem. 19.

In addition, Flood's claims arose from his employment at a T.G.I. Friday's restaurant in Scarsdale, New York, which is in the Southern District of New York, Second Am. Compl. ¶ 50, and several of the other Named Plaintiffs' claims arose from their employment at T.G.I. Friday's restaurants in the neighboring Eastern District of New York, *id.* ¶¶ 55, 61, 66, 71. Plaintiffs also assert eight claims on a classwide basis under the NYLL, for which operative facts are more squarely focused in New York. *Cf. Morris,* 2012 WL 3964744, at *4 n. 2 ("When state law claims predominate and the heart of those claims focus on a particular state, courts will even transfer a case *away* from a corporate headquarters.").

Finally, the Court is not persuaded by Defendants' argument that transfer is warranted because the T.G.I. Friday's restaurants in the Southern District of New York employ only three percent of Defendants' tipped employees. *See* Def. Mem. 19; Cunningham Decl. ¶ 15. This fact speaks to the widespread diffusion of the alleged harm and does not establish that the locus of operative facts is in the Northern District of Texas. Moreover, the T.G.I. Friday's restaurants in the Northern District of Texas employ only six percent of Defendants' tipped employees. *See* Cunningham Decl. ¶ 15. Courts have found similar differences to be inconsequential in determining the locus of operative facts. *See, e.g., Montgomery v. Tap Enters., Inc.,* 06 Civ. 5799, 2007 WL 576128, at *4 (S.D.N.Y. Feb. 26, 2007) (rejecting defendant's argument that "the cause of action [was] more substantially connected with Missouri" than with New York when 8.9 percent of defendant's sales occurred in Missouri and 3.6 percent occurred in New York). Accordingly, the Court concludes that this factor does not weigh in favor of transfer.

### vi. Availability of Process

Defendants contend that the availability of process factor favors transfer because their "crucial witnesses" (*i.e.,* eleven current employees, one former employee, and one soon-to-be former employee)

reside in the Northern District of Texas and, therefore, could not be subpoenaed for trial in the Southern District of New York. *See* Def. Mem. 6–9, 20–21; Cunningham Decl. ¶¶ 17–30. The Court disagrees. As an initial matter, to the extent that Defendants' witnesses are current employees, Defendants presumably can compel their testimony without a subpoena. *See, e.g., Martignago*, 2012 WL 112246, at *8 (collecting cases). With respect to the former and soon-to-be former employees, these witnesses are "not entitled to the same deference shown to other non-party witnesses, because former employees are more likely to willingly attend than other non-party witnesses." *Pilevesky v. SunTrust Bank*, 10 Civ. 2290, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010) (internal quotation marks and citation omitted). Moreover, where, as here, the moving party does not adduce evidence indicating that its witnesses would be unwilling to testify, the availability of process factor is of reduced value in the transfer analysis. *See, e.g., In re Collins*, 438 F.Supp.2d at 397 (explaining that defendants' failure to "offer evidence that any specific witness might refuse to testify ... reduces the weight that should be accorded to [the availability of process] factor"). At the same time, Plaintiffs have not provided detailed evidence regarding their own material witnesses, and Plaintiffs' collective and class action claims will likely require testimony from witnesses from across the country. Thus, the Court concludes that this factor is neutral.

### vii. Relative Means of the Parties

■ "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *Martignago*, 2012 WL 112246, at *9 (internal quotation

marks and citation omitted). In this case, Plaintiffs argue—and Defendants do not dispute—that Defendants have far greater financial resources than Plaintiffs. *See* Pl. Mem. 9–10; Def. Mem. 21–22. However, Plaintiffs have not adduced evidence showing that the costs associated with pursuing this action would increase markedly if transfer were granted. Accordingly, the Court finds that this factor weighs only slightly against transfer. *See, e.g., Fairchild*, 2011 WL 3438408, at *3.

### viii. Familiarity with Governing Law

"Familiarity with the governing law is generally given little weight in federal courts." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F.Supp.2d 525, 531 (S.D.N.Y.2004). This is particularly true when the governing law is a federal statute like the FLSA, which is equally familiar to all federal courts. *See, e.g., Martignago*, 2012 WL 112246, at *9. Courts in the Southern District of New York, however, are more familiar with applying the NYLL. *See, e.g., Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 536 (S.D.N.Y.1990) ("[C]ourts in New York are more familiar with New York substantive law than are the courts in [a non-New York] transferee forum." (internal quotation marks and citation omitted)). Given that Plaintiffs assert numerous NYLL claims, some of which are not mere facsimiles of their federal claims, the Court concludes that this factor weighs against transfer. *See, e.g., Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F.Supp.2d 474, 479 (S.D.N.Y.2006) ("[W]here there are state law claims, the forum's familiarity with governing law supports retention of the action." (internal quotation marks and citation omitted)).

### ix. Trial Efficiency and the Interests of Justice

In light of the Court's findings with respect to the above factors, and because

docket congestion is similar in the Southern District of New York and the Northern District of Texas, *see* Briton Decl. Ex. A at 1–2, ECF No. 38–1, the Court finds that transfer would neither promote trial efficiency nor serve the interests of justice.

In sum, Defendants' motion to transfer venue is DENIED, as none of the factors relating to convenience and the interests of justice weigh in favor of transfer.

## II. *Motion to Dismiss*

### A. Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

### B. The Twenty Percent Rule

#### i. Statutory and Regulatory Background

The FLSA generally requires employers to pay their employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). However, under the FLSA's "tip credit" provision, an employer may pay a "tipped employee" a lower cash wage so long as the amount of tips received by the employee makes up the difference between the tipped minimum wage (*i.e.,* an amount not less than $2.13 per hour) and the full minimum wage (*i.e.,* $7.25 per hour). 29 U.S.C. § 203(m). A "tipped employee" is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

Pursuant to 29 C.F.R. § 531.56(e), a regulation promulgated by the U.S. Department of Labor (the "DOL"), "if a tipped employee works two jobs, one in which his work customarily and regularly produces tips and one in which it does not" (*e.g.,* where a maintenance man in a hotel also serves as a waiter), "the employee is considered employed in dual occupations, and the tip credit may not be taken for any hours worked in the non-tip-producing occupation." *Chhab v. Darden Rests., Inc.,* 11 Civ. 8345, 2013 WL 5308004, at *2 (S.D.N.Y. Sept. 20, 2013) (citing § 531.56(e)). The regulation distinguishes this situation from "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," noting that "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." § 531.56(e).

Section 30d00(e) of the DOL's Field Operations Handbook (the "FOH") [5] address-

---

**5.** The FOH "is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance.... The FOH reflects policies es-

es § 531.56(e) and affirms that an employer is permitted to apply the tip credit to a tipped employee's "time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory activities)." FOH § 30d00(e). However, § 30d00(e) also states that "where the facts indicate that ... tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties."[6] Id.; see also U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013), available at http://www.dol.gov/whd/regs/compliance/whdfs15.htm ("[W]here a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing [duties related to the tipped occupation that are not directed toward producing tips], no tip credit may be taken for the time spent in such duties.").

ii. FLSA Minimum Wage Claim

▄▄▄ Defendants contend that Plaintiffs cannot, as a matter of law, state a FLSA minimum wage claim based on an alleged violation of the twenty percent rule. Not so. As an initial matter, although the Second Circuit has not ruled on this issue, the Circuits that have addressed it have rejected Defendants' position. See Driver v. AppleIllinois, LLC, 739 F.3d 1073, 1075 (7th Cir.2014) (endorsing the DOL's determination that "as long as [a] tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work ..., the employer doesn't have to pay the full minimum wage (that is, the minimum wage without the tip credit) for the time the employee spends doing that work" (citing 29 C.F.R. § 531.56(e); FOH § 30d00(e))); Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 881 (8th Cir.2011), cert. denied, —— U.S. ——, 132 S.Ct. 1094, 181 L.Ed.2d 977 (2012) (concluding that "[f]he 20 percent threshold used by the DOL in [the FOH] is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms 'part of [the] time' and 'occasionally' used in that regulation").[7] Indeed, the Eighth Circuit's well-reasoned decision in Fast, with which this Court agrees, explicitly rejected Defendants' argument that the twenty percent rule is not entitled to deference. See Fast, 638 F.3d at 879 ("[T]he DOL's interpretation of § 531.56(e) is entitled to Auer [v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ] defer-

---

tablished through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator." U.S. Dep't of Labor, Field Operations Handbook, available at http://www.dol.gov/whd/foh/index.htm.

6. The Court refers to this guidance as the "twenty percent rule."

7. Defendants' assertion that the Eleventh Circuit rejected the twenty percent rule in Pellon v. Business Representation International, Inc., 291 Fed.Appx. 310 (11th Cir.2008), see Def. Mem. 13, ECF No. 42, is incorrect. In Pellon, the district court remarked that "a determination whether 20% (or any other amount) of [an employee's] time is spent on non-tipped duties is infeasible," but then concluded that "such a determination is unnecessary under [the] facts [presented] ... [because] [t]he overwhelming majority of tasks complained of by [p]laintiffs ... do not qualify as general preparation work or maintenance." 528 F.Supp.2d 1306, 1313–14 (S.D.Fla.2007). In affirming the district court, the Eleventh Circuit merely stated: "After thorough review of the record and careful consideration of the parties' briefs and oral argument, we affirm on the basis of the district court's well-reasoned order." 291 Fed.Appx. at 311. This statement, read in conjunction with the district court's order, does not constitute a rejection of the twenty percent rule.

ence.").[8] Defendants' attempts to distinguish *Fast* are unpersuasive.[9]

In addition, courts in the Southern District of New York have consistently endorsed the twenty percent rule. *See, e.g., Thomas v. Apple–Metro, Inc.*, 14 Civ. 4120, 2015 WL 505384, at *4 n. 1 (S.D.N.Y. Feb. 5, 2015) ("[DOL] regulatory guidance has clarified that employers may not take advantage of the tip credit with respect to hours worked by employees performing non-tipped tasks to the extent that such employees spend more than 20 percent of their working time performing non-tipped work."); *Mendez v. Int'l Food House Inc.*, 13 Civ. 2651, 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014) ("Under the FLSA, tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." (internal quotation marks and citation omitted)); *Chhab*, 2013 WL 5308004, at *3 (noting that the DOL has clarified that "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work" and that "courts have concluded that the twenty percent limit on side work under the federal tip credit is entitled to deference").

Finally, district courts across the country have likewise endorsed the twenty percent rule. *See, e.g., Schaefer v. Walker Bros. Enters., Inc.*, 10 Civ. 6366, 2014 WL 7375565, at *3 (N.D.Ill. Dec. 17, 2014) (explaining that "[c]ourts give deference to [FOH § 30d00(e) ]"); *Hart v. Crab Addison, Inc.*, 13 Civ. 6458, 2014 WL 5465480,

8. "When an agency's regulations are ambiguous, a court must defer to the agency's interpretation of its own regulations, unless that interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Mullins v. City of New York*, 653 F.3d 104, 105–06 (2d Cir.2011) (describing *Auer* deference) (internal quotation marks, citation, and brackets omitted).

9. Specifically, Defendants argue that the reasoning in *Fast* should not be adopted because: (1) the Eighth Circuit mistakenly "believ[ed] that [§ 531.56(e) ] had been subject to notice and comment rulemaking" and, therefore, "incorrectly applied *Chevron* deference to the regulation"; and (2) "the Eighth Circuit's decision in *Fast* ... preceded [*Christopher v. SmithKline Beecham Corp.*, — U.S. —, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012), in which] the Supreme Court[ ] ... refine[d] ... its *Auer* jurisprudence[,] rejecting deference where [the] DOL has been inconsistent." Def. Mem. 17, 20. The Court disagrees. First, as Defendants concede, § 531.56(e) was added as a result of the notice-and-comment process. *See id.* at 17 (citing 32 Fed.Reg. 13575 (Sept. 28, 1967) ("After consideration of all responsive matter presented, the revision as proposed is hereby adopted, subject to the following changes: ... A new § 531.56(e) is added.")). Moreover, an agency's notice-and-comment rulemaking is sufficient where, as here, the final rule is "a logical outgrowth of the rule proposed." *Time Warner Cable Inc. v. FCC*, 729 F.3d 137, 169 (2d Cir.2013) (quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007)); *Nat'l Black Media Coal. v. FCC*, 791 F.2d 1016, 1022 (2d Cir.1986) ("[A] final rule need not be an exact replica of the rule proposed.... The test ... is whether the agency's notice would fairly apprise interested persons of the subjects and issues of the rulemaking." (internal quotation marks, citation, and brackets omitted)); *see also* Crediting Tips as Wages, 32 Fed.Reg. 222 (proposed Jan. 10, 1967). Second, the Supreme Court's ruling that *Auer* deference might be unwarranted "when the agency's interpretation conflicts with a prior interpretation," *SmithKline*, 132 S.Ct. at 2166, would not have affected the Eighth Circuit's decision in *Fast*, as the DOL's interpretation of § 531.56(e) has been consistent.

at *5 (W.D.N.Y. Oct. 28, 2014) ("[W]here a pleading plausibly alleges that an employee in a tipped occupation also ... performed related untipped duties more than 20% of a workweek, and the employer claimed the tip credit for all hours worked, the pleading states a minimum wage tip-credit claim without more, since the employer cannot take the tip credit *at all* for hours spent ... performing related untipped work that comprised more than 20% of a workweek."); *Ide v. Neighborhood Rest. Partners, LLC,* 32 F.Supp.3d 1285, 1293 (N.D.Ga.2014) ("[A] tip credit employee can spend up to 20 percent of his work time performing non-tip related duties without losing his exemption from full minimum wage compensation."); *Schamis v. Josef's Table, LLC,* 12 Civ. 80638, 2014 WL 1463494, at *4 (S.D.Fla. Apr. 15, 2014) ("[T]he Court rejects [d]efendant's argument that [p]laintiff's allegation that his nontipped duties exceeded 20% of his time is insufficient to state a cause of action."); *but see Richardson v. Mountain Range Rests. LLC,* 14 Civ. 1370, 2015 WL 1279237, at *8–9 (D.Ariz. Mar. 20, 2015) (McNamee, J.) (declining to give deference to the twenty percent rule); *Schaefer v. P.F. Chang China Bistro, Inc.,* 14 Civ. 185, 2014 WL 3809069, at *6 n. 6 (D.Ariz. Aug. 1, 2014) (McNamee, J.) (same).

Accordingly, the Court rejects Defendants' argument and concludes that a plaintiff can state a FLSA minimum wage claim based on an alleged violation of the twenty percent rule.

## C. Factual Sufficiency

■ Defendants nevertheless insist that Plaintiffs have failed to state a claim because the complaint does not identify: (1) "how much in 'excess' of 20%" Plaintiffs spent doing side work; (2) "how often" Plaintiffs performed these duties; (3) "during what time periods (day, week, month, year, etc.)" Plaintiffs performed these duties; and (4) "which particular duties [Plaintiffs] had to perform." Def. Mem. 22, ECF No. 42. The Court disagrees. To state a FLSA minimum wage claim based on an alleged violation of the twenty percent rule, a complaint must "plausibly allege[ ] that an employee in a tipped occupation also ... performed related untipped duties more than 20% of a workweek, and the employer claimed the tip credit for all hours worked." *Hart,* 2014 WL 5465480, at *5. The complaint need not provide the degree of specificity that Defendants demand. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (explaining that "a complaint ... does not need detailed factual allegations" to withstand a Rule 12(b)(6) motion to dismiss); *cf. also, e.g., Tackie v. Keff Enters. LLC,* 14 Civ. 2074, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) ("To state a FLSA overtime claim, a plaintiff must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime." (citing *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 199–201 (2d Cir.2013))); *Reyes v. Altamarea Grp., LLC,* 10 Civ. 6451, 2011 WL 280799, at *2 (S.D.N.Y. Jan. 18, 2011) ("Plaintiffs adequately state a FLSA tip credit claim ... by alleging that [d]efendants did not comply with the applicable statutory requirements, *i.e.,* that they were paid less than minimum wage; that they were not informed of Section 203(m)'s requirement; and that [d]efendants retained a portion of their tips in violation of the FLSA.").

■ Here, Plaintiffs allege that Defendants maintain a policy and practice whereby "tipped workers" (*e.g.,* servers, bussers, runners, bartenders, barbacks, and hosts) are required to spend a sub-

stantial amount of time doing non-tip-producing "side work," which includes, but is not limited to, the following tasks:

(1) setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces); (2) cutting lemons; (3) setting up dishes and glassware at the bar; (4) slicing garnishes for the bar; (5) lining baskets with wax paper for hamburgers; (6) assembling stacks of sliced tomatoes, pickles, and onions to be used to dress hamburgers; (7) breaking down sheets of premade desserts into smaller pieces; (8) stocking server stations with plates, glasses, and silverware; (9) rolling silverware; (10) sweeping and mopping floors; (11) stocking 'to-go' containers; (12) dusting window blinds and windowsills; (13) cleaning and breaking down the expeditor's line, soup station, and salad area; (14) taking out garbage; (15) cleaning the customer bathroom; (16) brewing large batches of tea and coffee; and (17) breaking down and cleaning the tea/coffee station and the soda stations.

Second Am. Compl. ¶¶ 15, 25; *see also id.* ¶¶ 193, 216, 238, 259, 282, 321, 339. Plaintiffs assert that Defendants require tipped workers to perform these tasks at the start and end of every shift, *id.* ¶¶ 16, 18—typically for at least an hour before the restaurant opens and approximately two hours after the restaurant closes, *id.* ¶ 19—and that, "[a]s a result, tipped workers spend in excess of two hours and more than twenty percent of their work time engaged in side work duties," *id.* ¶ 22; *see also id.* ¶¶ 193, 216, 238, 260, 282, 322, 340. In addition, Plaintiffs allege that Defendants compensate tipped workers "at the tipped minimum wage rate rather than at the full hourly minimum wage rate" for all hours worked. *Id.* ¶ 358; *see also id.* ¶¶ 13, 23, 190, 213, 235, 257, 279, 318, 336. These allegations are sufficient to survive

a motion to dismiss. Therefore, Defendants' motion to partially dismiss Plaintiffs' FLSA minimum wage claim is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' motions are DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 18, 19, 36, 40, and 131.

SO ORDERED.